[File No. 7174]

IN THE MATTER OF THE PETITION OF VILLAGE BOARD OF WHEATLAND, North Dakota, for Adequate Warning Signals at Crossing of the Northern Pacific Railway Company in the Village of Wheatland.

NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Appellant, v. S. S. McDONALD, Ben C. Larkin and C. W. McDonnell, as Members of the Public Service Commission of the State of North Dakota, and Village Board of Wheatland, North Dakota, Respondents.

(42 NW2d 321)

197

Opinion filed January 28, 1950. Rehearing denied Apr. 12, 1950.

*Conmy & Conmy,* for appellant.

*Roy K. Redetzke* and *Richard P. Gallagher,* Commerce Coun-

198

sel and Attorney for Public Service Commission, for respondents.

CHRISTIANSON, J.  This is an appeal from a judgment rendered by the district court of Cass County on an appeal to that court from an order of the Public Service Commission, requiring the Northern Pacific Railway Company to submit to the Commission for approval plans for decrease in grades at two crossings at Wheatland and upon such approval to proceed within ninety days after the entry of said order with the construction of such decreased grades; and to submit to the Commission plans and specifications for the installation of electrical warning devices at such crossings, and to proceed with the installation thereof within ninety days after the entry of said order.

The questions presented on this appeal involve, among others, the regularity of the proceedings had before the Public Service Commission.  This latter question involves in turn the application and construction of the statutes of this state relating to railroad crossings; to the authority of the Public Service Commission to make investigations and to order and hold hearings to ascertain and determine whether any railroad grade crossing over a state, county or township highway is dangerous to life and property and needs protection further than that set out in

NDRC 1943, Chapter 24; and to the notice to be given to the railway company of such hearing.

The laws of this state provide:

"*Warning Signs at Railroad Crossings.* The commission shall adopt and prescribe uniform warning signs for use at grade crossings in this state which will furnish adequate warning of the existence and nature of such grade crossings and shall make regulations as to the place of installation. There shall be at least three distinct types of such warning signs, to-wit:

1. Home-crossing sign, for use in the immediate vicinity of the crossing;

2. An approach-crossing sign, to indicate the approach to a grade crossing; and

3. Stop sign, which shall have the word 'stop' plainly appearing thereon, to indicate the necessity for persons on the highway approaching the crossing, whether in vehicles or otherwise, to come to a stop before proceeding over the grade crossing, according to the provisions of this chapter." NDRC 1943, 24–0902.

"*Railroads to Establish Signs.* At each grade crossing in this state hereafter established and at each grade crossing where and when the existing crossing signs are replaced, the railway company operating the railroad thereat shall erect and maintain on the highway on each side of the railroad track or tracks, and within a distance of seventy-five feet from the nearest rail, one or more of such uniform home-crossing signs." NDRC 1943, 24–0903.

"*Additional Signs May Be Required by Public Service Commission.* At each grade crossing where, because of the conditions surrounding the same, the reasonable protection to life and property makes it necessary for additional warning signs to be placed on the highway at a greater distance from the crossing than the home signs, such approach-warning signs shall be installed. The commission may designate any such grade crossings requiring such additional signs on either or both sides of said crossing. When the crossing is designated by the commission as requiring such additional protection, it shall notify the railway company operating the railroad thereat and the public authorities having the care of the highway. Such rail-

way company, within thirty days after such notification shall furnish the uniform signs to the public authorities, and the public authorities shall erect the signs in conspicuous places on the highway on either or both sides of the grade crossing, as the case may be, not less than two hundred feet from the crossing, and thereafter shall maintain the same." NDRC 1943, 24–0904.

*"Stop Signs May Be Required.* At each grade crossing where, because of the dangers attendant upon its use, the reasonable protection to life and property makes it necessary for all persons approaching the same to stop before crossing the railroad tracks thereat, stop signs shall be installed. The commission may designate any crossing requiring such additional protection as a stop crossing, and shall notify the railway company operating the railroad thereat of such designation. Within thirty days after such notification the railway company shall erect uniform stop crossing signs in conspicuous places on each side of said crossing." NDRC 1943, 24–0905.

*"Additional Safeguards at Crossings May Be Required.* The commission, upon written application made to it by the state highway commissioner, the board of county commissioners of any county, the board of supervisors of any township, or upon its own motion, shall investigate and determine whether any railroad grade crossing over any state, county, or township highway in the state is dangerous to life and property and needs protection further than that set out in this chapter, and may order the same protected in any manner it may find reasonable and proper, including a requirement that the railroad company separate the grades. In such cases, the commission shall give the railroad company interested such notice of the investigation as it deems reasonable and an opportunity to be heard before any order is made. The railroad company interested, within thirty days after the service of a copy of such order upon it, may appeal to the district court of the county within which such crossing is situated." NDRC 1943, 24–0908.

The Public Service Commission also is given authority, after notice and hearing, to require a railway company to construct and maintain crossings, to change crossings, and to protect

crossings.    NDRC 1943, 24–0910, 24–0911, 49–1113, 49–1114, 49–1120.

The above mentioned provisions of NDRC 1943 are predicated upon and constitute codification of statutes enacted in 1925 and 1927 and prior years.   See Laws 1925, Chapter 181; Laws 1927, Chapter 233.

In 1941 the Legislative Assembly enacted the Administrative Agencies Uniform Practice Act, Laws 1941, Chapter 240, which was embodied in NDRC 1943, Chapter 28–32.   The Administrative Agencies Uniform Practice Act is applicable to proceedings before the Public Service Commission.   NDRC 1943, Sec. 28–3201.   See, also, In re Northern Pacific Railway Co., 74 ND 416, 23 NW2d 49.

The Administrative Agencies Uniform Practice Act provides:

*"Rules of Procedure; Complaint; Notice of Hearing; Filing and Service.*

1. In all proceedings brought before an administrative agency having jurisdiction of the subject-matter, the petitioner, or the administrative agency when acting upon its own initiative, shall prepare and file a clear and concise statement or complaint with the agency having jurisdiction of said proceeding.   Said complaint shall contain a concise statement of the claims or charges upon which the petitioner relies, and the relief sought.   Upon the filing of such complaint, the appropriate administrative agency shall issue a notice for hearing, which shall fix the time and place for trial thereof upon its merits.   Said notice shall inform the party proceeded against that unless an answer to such complaint is served upon the petitioner and agency giving such notice at least three days before the time specified for hearing therein that the complaint will be deemed admitted, and that the agency will enter such order as the facts and law may warrant.   A true copy of the complaint and notice of hearing shall be served upon the respondent personally, or by registered mail, as the agency may direct, at least twenty days before the time specified for hearing thereof unless the service of such complaint or notice of hearing is waived, in writing, by the party proceeded

against, or unless the parties agree upon a definite time and place for hearing thereof with the consent of the agency having jurisdiction. Provided, however, that in case of an emergency the agency, in its discretion, may notice a proceeding for hearing upon the merits upon less than twenty days' notice. Every party to such proceeding shall be given a reasonable time within which to prepare for such hearing, which may be extended by the agency upon good cause being shown by the applicant therefor." NDRC 1943, 28-3205, as amended by SL 1945, c 218; 1947 Supplement to NDRC 1943, c 28-32.

"*Specifications of Any Issues to Be Furnished by Agency.* Whenever an administrative agency, pursuant to authority conferred upon it by law, shall institute an investigation upon its own motion or without the filing of a specified complaint, or shall hold any hearing or make any independent investigation upon the claim or request of any person, no decision shall be made by the agency until all parties in interest shall have been furnished with a written specification of the issues which are to be considered and determined, nor until an opportunity shall have been afforded to such parties to present evidence and to be heard upon the precise issues so specified. Provided, however, that the Commissioners of the Workmen's Compensation Bureau may make awards without the giving of the notice herein provided for." NDRC 1943, 28-3208, as amended by SL 1945, c 219; 1947 Supplement to NDRC 1943, c 28-32.

The Act further provides that any party to any proceeding heard by an administrative agency, except in cases where the decision of the administrative agency is declared final by any other statute, may appeal from the decision to the district court. NDRC 1943, 28-3215. It makes it the duty of an administrative agency where such appeal has been taken to prepare and file in the office of the clerk of the district court in which the appeal is pending the original or a certified copy of the entire proceedings had before the agency, including the pleadings, notice, transcript of testimony, exhibits etc. NDRC 1943, 28-3217. It provides:

"The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence

considered by the court shall be confined to the record filed with the court. . . . After such hearing, the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact. If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court." NDRC 1943, 28–3219.

It appears from the record that in April 1947 there was presented to the Public Service Commission the following communication:

"Wheatland, N. Dak.
April 18, 1947.

To the Public Service Comm.

The town board of Wheatland N. Dak. held a meeting to-day at 2 P. M. to petition you to hold a meeting at Wheatland for to get N. P. Railroad to put in crossing signals.

Yours truly,
H. H. Wheeler, Clerk

Supervisors
M. J. McLean, Chrm.
Albert Johnson
J. K. Peterson"

Thereafter the Commission caused the following notice of hearing to be issued and served upon the Northern Pacific Railway Company:

## "PUBLIC SERVICE COMMISSION
## STATE OF NORTH DAKOTA

In the matter of the Petition of the Village Board of Wheatland, North Dakota for adequate warning signals at a crossing of the Northern Pacific tracks in the Village of Wheatland, N. D.     CASE NO. 4393

### NOTICE OF HEARING

Notice is hereby given that the petition of the Village Board of Wheatland, North Dakota for adequate warning signals at a crossing of the Northern Pacific tracks in the village of Wheatland, Cass county, North Dakota, will be considered and Public hearing held thereon by the Public Service Commission of the State of North Dakota, on Tuesday, June 24th, 1947, at the hour of 1:30 P.M., Central Standard Time, at a place to be provided for by the petitioner, in Wheatland, North Dakota, at which time and place all interested parties may be heard and offer evidence for or against the said petition.

Dated at Bismarck, North Dakota, 31st day of June, 1946.

By order of the Public Service Commission:

(Commission Seal)            /s/ Elmer Olson
Elmer Olson, Secretary"

When the matter came on for hearing before the Commission the attorney for the railway company made a special appearance and so appearing filed written objections to the jurisdiction of the Commission to hear the matter on the grounds that there had been no sufficient compliance with NDRC 1943, Sections 28–3205 and 28–3208 as amended by Chapters 218 and 219, Laws 1945. The transcript of the proceedings had at the hearing shows that only the president of the Commission was present at and participated in the hearing. The transcript of the pro-

ceedings also shows that the commissioner who conducted the hearing referred to the fact that the railway company made a special appearance and filed objection to the jurisdiction of the Public Service Commission and stated, "the objection will be filed and we will proceed to take testimony," and then he directed that the first witness in support of the application be called. Thereupon a number of witnesses were called who testified in favor of the application. The attorney for the railway company cross-examined such witnesses and later after the petitioners had rested he called certain witnesses who testified in opposition to the application. On July 12, 1947, the Public Service Commission made an order ordering and requiring the Northern Pacific Railway Company to submit to the Commission plans for decreasing grades at two crossings at Wheatland, North Dakota (one immediately east and the other immediately west of the depot) for the Commission's approval and that upon such approval the railway company proceed within ninety days from and after the entry of such order with such construction; and further that the railway company submit to the Commission plans and specifications for the installation of electrical warning devices at such crossings and proceed with the installation thereof within ninety days after the entry of said order. Thereafter in August 1947 the Northern Pacific Railway Company duly took and perfected an appeal to the district court of Cass County from such order of the Public Service Commission. Later in September 25, 1947, the Commission made and filed an amended order wherein it is said:

"Upon further consideration of the record the Commission has determined that the railway crossing immediately west of the depot of the railway company in the village of Wheatland is not situated on a highway subjected to heavy vehicular traffic, but that it is used by some school children of the village in going to and from the school therein and is therefore hazardous in that respect; that the Village Board may, however, restrict the use of this crossing so as to eliminate the danger to school children without materially inconveniencing the public."

Following this statement the amended order provided that the order of the Commission dated July 12, 1947, be modified and

amended so as to eliminate the requirement contained in the former order that the railway company submit plans for decreasing grades and for the construction of automatic warning signals at such crossing west of the depot and thus to leave the order made on July 12, 1947, in effect only as to the railway crossing immediately east of the depot. The Public Service Commission made no ruling upon the objection that had been submitted by the railway company to the jurisdiction of the Commission and no reference was made to such objection in either of the orders. The railway company appealed to the district court from the order of the Commission.

The district court held that the railway company waived its special appearance and objection to the notice of hearing before the Commission by participating in the hearing. The district court also held that the record of the hearing before the Commission showed sufficient facts to support the findings of fact made by the Commission and to warrant the conclusions and decision of the Commission; but that the Commission failed to comply with the law in issuing its amended order of September 25, 1947, in that no notice of such amendment was given to the railway company and that under the statute notice must be given by the Commission before it had authority to amend the order formerly made. The district court ordered that the appeal of the railway company from the order of the Public Service Commission be dismissed and that "the proceeding be remanded to said Public Service Commission with the direction that said Commission give the said Northern Pacific Railway Company notice of hearing according to the statute in such case made and provided for the purpose of amending the said order of said Commission dated July 12, 1947." The railway company has appealed from the judgment entered pursuant to the order of the district court.

In a memorandum opinion the trial court gave the following reasons for the conclusion that the railway company had waived its special appearance and the objections filed by it at the threshold of the hearing before the Public Service Commissioner who conducted the hearing:

"The appellant had its choice of two alternatives

(1) To rely upon its special appearance and refrain from participation in the hearing; or,

(2) To abandon its special appearance and appear generally by participating in such hearing;

"It chose the second of the two alternatives. Early in the hearing appellant's counsel made a number of objections to questions asked of witnesses and proceeded to cross examine witnesses. Such procedure on the part of counsel constitutes a general appearance and waives such defects as may have existed in the Notice of Hearing."

There is a conflict in the authorities as to whether a party who has made a special appearance for the purpose of objecting to the jurisdiction of the court or tribunal before whom a trial or hearing is to be held waives the special appearance and the objections which he has made under such special appearance by thereafter pleading to the merits and participating in the hearing or trial. In some jurisdictions it is held that where a party appears specially to object to the jurisdiction and his objection is overruled he must elect either to stand on his objection or to go into the merits, and if he goes into the merits and participates in the hearing or trial the objection is thereby waived. 4 CJ 1365 et seq. But in many other jurisdictions a party who has appeared and made timely objection to the jurisdiction is held not to lose the benefit of his attack on the jurisdiction by thereafter answering and pleading to the merits and participating in the hearing or trial, provided he does not invoke the jurisdiction by becoming an actor himself and asking for some relief which could be granted only if the tribunal had jurisdiction. 4 CJ pp 1366–1367.

The latter rule was adopted and approved by this court early in its history and has been reaffirmed in subsequent cases. Miner v. Francis and Southard, 3 ND 549, 58 NW 343; Ellingson v. Northwestern Jobbers Credit Bureau, 58 ND 754, 227 NW 360; Burns v. Northwestern National Bank of Minneapolis, 65 ND 473, 260 NW 253. The rule has also been approved and applied by the Supreme Court of the United States in many cases. Southern Pacific Company v. Denton, 146 US 202, 36 L ed 943; Davidson Bros. Marble Company v. U. S. ex rel Gib-

son, 213 US 10, 53 L ed 675; Citizens Sav. & T. Co. v. Illinois C. R. Co., 205 US 46, 51 L ed 703; Harkness v. Hyde, 98 US 476, 25 L ed 237; Davis v. O'Hara, 266 US 314, 69 L ed 303. The decision of the court in Miner v. Francis and Southard, supra, is epitomized in paragraph 2 of the syllabus as follows: "After defendants had appeared specially, and objected to the jurisdiction of the court on the ground that the summons was not sufficient to confer jurisdiction, and after the court had overruled this objection, they appeared generally, and answered. *Held,* that such appearance was not a voluntary appearance, and did not waive the defendants' objection to the jurisdiction of the court."

In the opinion in the case the court said: "Some of the courts which hold an appearance under such circumstances to be voluntary deem it unfair that the defendant should have the chance of defeating a judgment on the merits by sustaining the jurisdictional point on appeal, while he enjoys the certainty of sustaining the judgment, if favorable to himself. But it often happens that, upon the trial of an action, reversible error is committed by the court while plaintiff is proving his case. Must the defendant then be regarded as waiving such error because he proceeds, with the chance of reversal if defeated? It is well to put the responsibility for this condition where it belongs. That the defendant enjoys this advantage is owing to the action of the plaintiff, in persisting in his prosecution of the case after he has been fairly warned by the defendant that he will, at all stages of the action, insist upon his contention that the court had no right to take jurisdiction of his person. Let the plaintiff dismiss, and start anew, if he is unwilling that defendant should enjoy this advantage. We are aware that there are a number of cases in which the contrary view is adopted; but we feel that the rule which we establish in this case is more in accord with principle, and more equitable in its spirit, having in view the interests and rights of both plaintiff and defendant in the action. We hold that a general appearance after an objection to jurisdiction has been overruled, does not constitute a voluntary appearance, unless the contrary is shown, provided the defendant

seeks a review of his objection to the jurisdiction of the court in the very action in which it is made."

In Ellingson v. Northwestern Jobbers Credit Bureau, supra, the court announced the following rule in paragraph 3 of the syllabus: "A defendant who has made timely and proper objection to the service of the summons by a motion to vacate such service does not waive the objection to the jurisdiction by answering and trying the case on the merits."

In Harkness v. Hyde, supra, the court said: "The right of the defendant to insist upon the objection to the illegality of the service was not waived by the special appearance of counsel for him to move the dismissal of the action on that ground or what we consider as intended, that the service be set aside; nor, when that motion was overruled, by their answering for him to the merits of the action. Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when, being urged, it is overruled and the defendant is thereby compelled to answer. He is not considered as abandoning his objection because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality that the objection is deemed to be waived." 98 US 479, 25 L ed 238.

The Encyclopedia of United States Supreme Court Reports (Vol 2, pp 455–457) says: "The established rule is that an appearance which is solely to challenge the jurisdiction, is not a general appearance in the cause, and does not waive the illegality of the service or submit the party to the jurisdiction of the court. Nor is the objection waived when being urged it is overruled, and the defendant is thereby compelled to answer. He is not considered as abandoning his objection, because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived."

The matter of preserving a special appearance, and whether a

party who has appeared specially and objected to the jurisdiction must stand on his objection, and whether if after the objection has been overruled he pleads to the merits he thereby waives the objection formerly made was discussed at some length by Dr. Sunderland in an article entitled "Preserving a Special Appearance" in 9 Michigan Law Review, p 396 (1911). In this article Dr. Sunderland considered the two prevailing rules and the decisions of the Federal courts and of the courts of last resort in the several states dealing with the subject. His conclusion is stated in the concluding paragraph as follows: "Viewing the question in the light of both reason and authority, it seems clear that the better rule is that which holds, that after an objection to the jurisdiction of the court over the person of the defendant has been made and overruled, an exception will entitle the defendant to preserve his objection for review, notwithstanding his subsequent pleading to the merits."

The question whether a party who has made a special appearance and objected to the jurisdiction of the tribunal has abandoned the special appearance and waived the objection to jurisdiction and voluntarily made a general appearance and thus submitted to the tribunal's jurisdiction is primarily one of intent, and where the whole purpose of an appearance is to contest the tribunal's jurisdiction of the person "conduct which will destroy the basis of the appearance and convert it into a general one must be clear and unequivocal." U. S. v. Brown, 55 F2d 72; U. S. v. Collins, 55 F2d 70; Dahlgren v. Pierce, et al., 263 F 841; Ervin v. Quintanilla et al., 99 F2d 935. See, also, Citizens Sav. & T. Co. v. Illinois C. R. Co., supra; Davis v. O'Hara, supra.

In this case the hearing was conducted with only one of the three members of the Public Service Commission in attendance. Obviously he could not make any final or binding ruling on the objections made by the railway company to the Commission's jurisdiction and he did not attempt to do so. He merely announced that the railway company had filed a special appearance and objections to the jurisdiction of the Commission and stated that "the objections will be filed and we will proceed to take testimony." Thereupon he directed that the first witness be called. The inference reasonably to be drawn from what transpired is

that ruling on the objection by the Commission was reserved and that the taking of testimony would be subject to the objections which had been filed and to the ruling which eventually would be made thereon. The practice thus adopted is not an unusual one and at times a somewhat similar practice has been followed in this court. Frequently a motion to dismiss an appeal for want of jurisdiction is noticed to be heard in a case that has been set for argument, and where the parties are prepared also to argue the case on the merits, as a matter of convenience to the parties and to save time and expense arguments are heard both upon the motion to dismiss and upon the merits with the reservation that the argument on the merits will not be deemed to constitute a waiver of the objections to the jurisdiction.

The fact that no ruling was made on the objections should not operate to the prejudice of the objecting party. Such party was not to blame for the failure to comply with the law which furnished a basis for the objection nor was such party to blame for the situation which made it impossible for the Commission to make a final ruling on the objection before it proceeded to hear the matter on the merits. A party who has submitted due and timely objection to jurisdiction is not deprived of his rights because the court or tribunal ignores the objections or proceeds with the hearing, or trial as though the objection has been overruled. Golden v. Hyde, 117 Wash 677, 202 Pac 272. See, also, Dahlgren v. Pierce, et al., supra; Citizens Sav. & T. Co. v. Illinois C. R. Co., supra.

The law (NDRC 1943, 28–3205, as amended by SL 1945, c 218) provides: "In all proceedings brought before an administrative agency having jurisdiction of the subject-matter, the petitioner, or the administrative agency when acting upon its own initiative, shall prepare and file a clear and concise statement or complaint with the agency having jurisdiction of said proceeding. Said complaint shall contain a concise statement of the claims or charges upon which the petitioner relies, and the relief sought. Upon the filing of such complaint, the appropriate administrative agency shall issue a notice for hearing, which shall fix the time and place for trial thereof upon its merits. . . . A true

copy of the complaint and notice of hearing shall be served upon the respondent personally, or by registered mail, . . . ."

In this case there was not filed with the Commission "a clear and concise statement or complaint . . . of the claims or charges upon which the petitioner relies and the relief sought," as required by the statute. There was merely filed a communication from the supervisors and clerk of Wheatland Township, dated April 18, 1947, addressed to the Public Service Commission, stating that the "town board of Wheatland, N. Dak. held a meeting to-day at 2 P.M. to petition you to hold a meeting at Wheatland for to get N. P. Railroad to put in crossing signals." Obviously this statement did not conform to the requirements of the law nor was a copy thereof served upon the railway company. The notice that was issued by the Commission and served upon the railway company stated that the matter to be heard was "the petition of the Village Board of Wheatland, North Dakota for adequate warning signals at a crossing of the Northern Pacific tracks in the village of Wheatland." It may be mentioned in passing that the notice was in error in referring to the matter to be heard as being the petition of "the Village Board of Wheatland, North Dakota." Wheatland is not an incorporated village. The communication or petition on which the Commission acted was not presented to it by the board of trustees of the village of Wheatland but by the board of supervisors of Wheatland Township.

According to the evidence the unincorporated village or town of Wheatland has a population of about 150 persons. There are two crossings over the tracks of the Northern Pacific Railway Company at Wheatland, one on the west side and the other on the east side of the depot. The crossings are about 400 feet apart. Neither the communication from the township board nor the notice of the hearing made any reference to a change or decrease of grades. The only matter referred to in such communication was "to get N. P. Railroad to put in crossing signals;" and the only reference in the notice of the hearing to the matter to be heard was the "petition of the Village Board of Wheatland, North Dakota for adequate warning signals at a crossing of the Northern Pacific tracks in the village of Wheat-

land." Obviously a change of grades was a matter of substance which the statute clearly contemplated should be set forth in the statement or complaint which the statute requires to be filed as a basis for a proceeding. It will be noted also that after the first order had been made and after the appeal had been taken from such order the Commission apparently of its own volition and without notice amended the former order and eliminated the requirement in such order relating to the installation of electrical warning devices and decrease of grades at the west crossing. The record contains no explanation of the reason for the change except that set forth in the second order.

The law provides that on an appeal from an order of the Public Service Commission the court shall try and hear the appeal and "after such hearing, the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, . . . or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, . . . ." It is obvious that in this case the provisions of the chapter have not been complied with in the proceedings had before the Public Service Commission; that there was noncompliance with the provisions of the law at the very initiation of the proceeding before the Commission. No statement or complaint containing "a statement of claims or charges" and of the relief sought had been filed with the Commission and a copy of the statement or complaint of claims or charges and of the relief sought by the petitioners had not been served upon the railway company as required by NDRC 1943, 28–3205 as amended by SL 1945, c 218. The order entered by the Commission from which the appeal was taken related to and sought to determine matters which had not been alluded to in the communication on which the Commission ordered the hearing or in the notice of hearing. If further proceedings are to be had before the Commission to require the railway company to install warning devices or to decrease the grade at such crossing or crossings or both, it will be necessary that there be filed with the Commission a statement or complaint containing a concise statement of the claims or charges and the relief which the petitioners seek and that a true copy of such statement or

complaint and notice of hearing be served upon the railway company as prescribed by NDRC 1943, 28–3205 as amended by SL 1945, c 218. In short, it will be necessary that a new proceeding be instituted conformable to the provisions of the law.

The judgment appealed from is reversed and the case is remanded with directions that the district court remand the case to the Public Service Commission with the directions that the Commission set aside its former order and dismiss the proceeding.

NUESSLE, C. J., MORRIS, BURKE and GRIMSON, JJ., concur.

## On Petition for Rehearing

CHRISTIANSON, J. The members of the Public Service Commission have petitioned for a rehearing. The first contention is that the appellant railway company by appealing to the district court from the decision of the Public Service Commission invoked the jurisdiction of the court and thereby waived the objections which it had made at the hearing before the commission. In support of this contention the respondents cite Lyons v. Miller, 2 ND 1, 48 NW 514; Miner v. Francis & Southard, 3 ND 549, 58 NW 343; and Deering & Co. v. Venne, 7 ND 576, 75 NW 926. The rule announced in those cases is not applicable here. Those cases involved appeals to the district court by a defendant against whom judgment had been rendered in a justice's court and wherein the appellant demanded a new trial in the district court. The appeals were taken under a statute which provided that in such cases "the action shall be tried anew in the district court in the same manner as actions originally commenced therein." CL 1913, Sec 9172. In those cases the controversies were within the original jurisdiction of the district court. That court had authority to entertain and determine those cases within its original jurisdiction and the appeals invoked the original rather than the appellate jurisdiction of the court. The object of appeal in those cases was to have the cases tried and determined in the district court on their merits "in the same manner as actions are originally commenced therein." In those cases

the subject-matter of the controversy was within the original jurisdiction of the district court, and the appellant by invoking the power of the court to try the case gave the court jurisdiction over his person as a party, and thereby conferred upon the district court jurisdiction of the case, wholly without regard to what action had been taken in the justice's court. Upon the trial, the powers of the district court in such cases "in dealing with the pleadings and the evidence, in the application of the law, and in the rendition of judgment according to the right of the case, all independent of the action of the lower court, is no different from what it would have been if the case were begun there originally." Bryan v. Miller, 73 ND 487, 497, 16 NW2d 275, 281–282.

The subject-matter of the controversy involved on this appeal is not one within the original jurisdiction of the district court. On an appeal from a determination of the Public Service Commission the district court does not exercise the original jurisdiction "of all causes, both at law and equity" vested in it by the constitution, it exercises appellate jurisdiction conferred upon it by statute. ND Const, Sec 103. Although it has been said that where, on an appeal from a determination of an administrative agency, the appellant demands a retrial of the entire case, the case is triable de novo in the district court, "this language, it is apparent, was not used with exact accuracy. The case is not tried anew. There is no new evidence or any evidence adduced in this court. The case must be decided upon a record already prepared" by the administrative agency which rendered the decision appealed from. Christianson v. Farmers Warehouse Ass'n, 5 ND 438, 443, 67 NW 300, 301, 32 LRA 730.

The appellant railway company by its appeal did not seek to have the district court conduct a trial and try the controversy as though no trial had been had. It did not abandon the objections which it had made upon the hearing before the Public Service Commission. It insisted upon such objections and asked the district court to review the action of the Public Service Commission in ignoring such objections and proceeding with the hearing. According to the express provisions of the statute the scope of review on an appeal from the Public Service Commission extends to a review of whether in the proceedings before

the commission there has been failure to comply with any of the provisions of the law relating to the ordering and conduct of such hearing. NDRC 1943, Sec 28–3219. On the appeal to the district court and again on the appeal to this court the appellant predicated error upon the failure of the commission to comply with the provisions of NDRC 1943, Sec 28–3205 as amended by SL 1945, c 218, which requires that in any such proceeding the petitioner, or the Public Service Commission when acting upon its own initiative, "shall prepare and file a clear and concise statement or complaint" with the Public Service Commission; that "said complaint shall contain a concise statement of the claims or charges upon which the petitioner relies and the relief sought," and that a true copy of such complaint shall be served upon the respondent personally or by registered mail. At the threshold of the hearing the railway company by specific objection called to the attention of the commission the failure to comply with the provisions of the law. These objections were ignored. As pointed out in our opinion the record shows that the railway company did not voluntarily abandon its objections but adhered to them. The statute specifically grants to the respondent in such proceedings, that is, to the railway company in this case, the right of appeal from the determination of the Public Service Commission and prescribes the procedure on such appeal. If it be true that a party who appeals from a decision of the Public Service Commission by such appeal waives all objections which he has interposed charging noncompliance with the provisions of the statute in the proceedings had before the commission by taking an appeal, then, of course, he would be effectively denied the rights which the statute clearly gives him and for the protection of which it grants him the right of appeal.

The statute specifically provides that on an appeal from a determination of the Public Service Commission the scope of review shall extend to whether "any of the provisions of this chapter have not been complied with in the proceedings before the agency." NDRC 1943, Sec 28–3218. In this case there was a failure to comply with material provisions of the statute. The railway company called the attention of the commission to such

noncompliance at the earliest opportunity. It made special appearance and objected to the authority of the commission to proceed with the hearing on the ground that the provisions of the law had not been complied with. This it had an unquestioned right to do. It also had the right to appeal from the decision which the commission made in the proceedings and on such appeal to ask for and have reviewed the action of the commission of which it complained. The appellant railway company has not abandoned or waived the objections which it made.

It is next contended "that the rule that one who had made timely and proper objection to the jurisdiction of the court over the person of the defendant does not waive the objection by participation in the trial on the merits, should not be applied to administrative proceedings." The constitution of this state provides that "the powers and duties" of the Public Service Commissioners "shall be prescribed by law." ND Const, Sec 83. The statutes of this state prescribe the manner in which such powers are to be exercised. The powers conferred upon the commissioners "must be exercised in accordance with the statute bestowing such powers and they can act only in the mode prescribed by the statute. . . . They cannot rightfully dispense with any of the essential forms of proceedings which the legislature has prescribed for the purpose of investing them with power to act. A commission may not assert the general power given it and at the same time disregard the essential conditions imposed upon its exercise." 42 Am Juris, Public Administrative Law, Sec 68, p 379. While there are differences in the origin and functions of courts and administrative agencies which preclude "the wholesale transportation to administrative proceedings of the rules of procedure, trial, and review which have evolved from the history and experience of courts," and as a general rule such proceedings are not restricted by the same technical and formal rules which govern trials before a court, nevertheless, "in the exercise of judicial or quasi-judicial powers, the elementary and fundamental principles of judicial inquiry should be observed." 42 Am Juris, p 446; Pigeons Case, 216 Mass 51, 102 NE 932; Ann Cas 1915A 737. See also State ex rel. Wehe v. Frazier, 47 ND 314, 182 NW 545. It is recognized

that "the general rule that objections to call attention to nonobservance of applicable rules are necessary in administrative proceedings for the same reasons that they are necessary before a court." 42 Am Juris, Public Administrative Law, Sec 143, p 487. And the general rule that an appellate court will consider only such questions as were raised and reserved in the lower court applies on review by courts of administrative determinations, so as to preclude from consideration questions or issues which were not raised in the administrative proceedings. 42 Am Juris, Public Administrative Law, Sec 236, p 675.

A party to a proceeding before the Public Service Commission has the right to a hearing conducted conformable to the provisions of the law and has the right by appropriate objection to call attention to the fact that there has been nonobservance of or noncompliance with the provisions of the law in the proceedings, as did the railway company in this case. The reasons stated by this court, by the Supreme Court of the United States, and by courts of other states for holding that a party who has appeared and made timely objection to the authority of a court to hear and determine an action does not lose the benefit of the objection so made by thereafter answering to the merits and participating in the hearing or trial, provided he does not invoke the power of the court by becoming an actor himself and asking for some relief which could be granted only if the court had jurisdiction and authority to hear and determine the controversy, are equally applicable in a proceeding before an administrative agency. We so held in our opinion in this case and we adhere to that holding.

It is next contended that the railway company failed to exhaust available administrative remedies and hence is not entitled to judicial relief. It is said, (1) that the railway company might have applied for a continuance and thus obtained time to enable it to prepare its defense; and (2) that the railway company had the right to request a rehearing after the decision was made; that the railway company failed to move for a continuance and also failed to request a rehearing and hence failed to exhaust available administrative remedies and is not entitled to attack the determination of the commission on this appeal.

These contentions are devoid of merit. The objection made by the railway company called attention to noncompliance with the law at the very inception of the proceedings and challenged the authority of the commission to conduct the hearing at all. It had a right to a hearing as provided by law. It had the right by appropriate objections to call attention to the fact that the commission was conducting a hearing otherwise than in conformity with the law, and it was not required to waive the objections which it had made and accept the situation that had been created by such noncompliance and ask that as a matter of grace and favor it be granted further time to prepare for a hearing to be held otherwise than in conformity with the law. Obviously a motion for a continuance to obtain further time to participate in such hearing would not have been an adequate remedy.

In support of the contention that the railway company should have requested a rehearing and that the failure to do so operates to deprive the railway company of any right to judicial relief counsel cites a number of decisions of the Supreme Court of the United States wherein equitable relief was sought against the enforcement of orders by administrative agencies and the court denied injunctive relief on the ground that there were available other adequate legal remedies to the plaintiff. In so doing the court merely applied the fundamental principle of equity jurisprudence that lack of adequate and complete remedy at law is a prerequisite for the exercise by equity of its power to grant injunctive relief. 28 Am Juris, Injunctions, Sec 37, p 232; Bismarck Water Supply Co. v. Barnes, 30 ND 555, 153 NW 454. In this case the railway company is not seeking equitable relief. It did not invoke equitable remedies. It invoked the specific legal remedy which the legislature has provided for a review of the decisions of the Public Service Commission. Furthermore, the statute nowhere either expressly or by necessary implication requires a party to request a rehearing as a condition precedent to the right of appeal from a determination of an administrative agency. It merely provides that any party before an administrative agency who is aggrieved by the decision thereof "may request a rehearing by such agency" and provides the manner in which such request must be

made. NDRC 1943, Sec 28–3214. The remedy by petition for rehearing is permissive only and the statute clearly warrants the conclusion that the legislature did not intend that a request for a rehearing should constitute a prerequisite to an appeal from a final decision of an administrative agency. 42 Am Juris, Public Administrative Law, p 583; U. S. v. Abilene & Southern Ry. Co., 265 US 274, 68 L ed 1016; Moore v. Ill. Central RR. Co., 312 US 630, 85 L ed 1089. A rehearing is denied.

Nuessle, C. J., Morris, Burke and Grimson, JJ., concur.