14 P.3d 358

**Jon Masaru YOKOUCHI,**
Petitioner–Appellant,

v.

**ADMINISTRATIVE DIRECTOR OF**
the COURTS, State of Hawai'i,
Respondent–Appellee.

No. 22718.

Intermediate Court of Appeals of Hawai'i.

Oct. 30, 2000.

Richard L. Rost and James W. Geiger (Rost & Geiger) on the briefs, Wailuku, for petitioner-appellant.

Girard D. Lau, Deputy Attorney General, on the briefs, State of Hawai'i, for respondent-appellee.

WATANABE, Acting C.J., LIM, J., and Circuit Judge BLONDIN, in Place of BURNS, C.J., Recused.

Opinion of the Court by WATANABE, J.

Petitioner–Appellant Jon Masaru Yokouchi (Yokouchi) appeals the July 13, 1999 Judgment of the District Court of the Second Circuit, Wailuku Division (the district court),

which affirmed the April 19, 1999 decision of the Administrative Director of the Courts (the Director) to revoke Yokouchi's driver's license for one year. We affirm.

## BACKGROUND

On March 18, 1999, Officer Ricky C. Uedoi (Officer Uedoi), while traveling west on L. Main Street and approaching Hoʻokahi Street, observed a vehicle driven by Yokouchi exit Hoʻokahi Street and make a right turn onto L. Main Street without stopping at the posted stop sign. Yokouchi's vehicle then got into the inner lane without signaling. Officer Uedoi reported that as he got behind of the vehicle, he observed the operator not wearing his seat belt. As a result of his observations Officer Uedoi stopped Yokouchi's vehicle. When Officer Uedoi spoke with Yokouchi, Officer Uedoi detected "a strong odor of liquor coming from [Yokouchi's] breath" and observed that Yokouchi's eyes were "red, watery and bloodshot" and "[h]is face was red and flushed." Yokouchi submitted to taking the field sobriety tests; however, he could not perform them successfully.[1] Officer Uedoi then asked if Yokouchi would like to voluntarily provide a preliminary breath sample. Officer Uedoi informed Yokouchi that he was not required to submit to the test. Additionally, if Yokouchi submitted to the test, "this would not satisfy the requirements in taking a chemical test later at the Police Station should he be arrested for Driving Under the Influence of Liquor [ (DUI) ]." The officer also informed Yokouchi "that if he did not wish to take this test, no penalties would be assessed against him." Yokouchi did not provide a sample. Officer Uedoi then arrested Yokouchi for DUI, in violation of Hawaiʻi Revised Statutes (HRS) § 291–4 (Supp.1998).

After transporting Yokouchi to the Wailuku Police Station, Officer Uedoi gave Yokouchi a copy of AD–DUI Form 2, which outlines the options Yokouchi had for refusing or taking a breath or blood test. The form reads, in pertinent part, as follows:

Pursuant to the Administrative Driver License Revocation Law, I must inform you [ (Yokouchi) ] of the following:

a. That you may take either a blood test or a breath test or both;

b. That if you refuse to take any tests the consequences are as follows: (1) if your driving record shows no prior alcohol enforcement contacts during the five years preceding the date of arrest, your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take a test and failed it, (2) if your driving record shows one prior alcohol enforcement contact during the five years preceding the date of arrest, your driving privileges will be revoked for two years instead of the one year revocation that would apply if you chose to take a test and failed it, (3) if your driving record shows two prior alcohol enforcement contacts during the seven years preceding the date of arrest, your driving privileges will be revoked for four years instead of the two year revocation that would apply if you chose to take a test and failed it, (4) if your driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest, your driving privileges will be revoked for life regardless of whether you take a test or not, (5) if you are under the age of eighteen years, your revocation will be for the period remaining until your eighteenth birthday or for the appropriate revocation period listed above, whichever is longer;

c. That criminal charges under [HRS § 291–4], may be filed;

d. That if your driving privilege is revoked, notice of the results of the hearing will be sent to the examiner of drivers of each county, and that the examiner shall deny you a license or permit to operate a motor vehicle for the period of the above revocation;

---

1. The field sobriety tests consisted of the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test. Yokouchi failed all three of these tests.

e. That you shall be referred to a substance abuse counselor for an assessment of your dependence and the need for treatment at your own expense; and

f. That you shall be required to obtain treatment at your own expense if deemed appropriate.

g. You are not entitled to an attorney before you submit to a breath or blood test.

h. That you shall not qualify to request a conditional permit if you refuse to take a breath or blood test.

Officer Uedoi then read the foregoing portion of AD–DUI Form 2 out loud to Yokouchi and "verbally explained the form, including what a conditional permit was and that [Yokouchi] would not be eligible to request for a conditional permit if he elected to refuse to take any type of chemical test(s)." Officer Uedoi also informed Yokouchi that the director of the Administrative Drivers License Revocation Office (ADLRO), which is within the Administrative Director's Office, may grant Yokouchi a conditional permit "to operate a motor vehicle to/from work, to/from [Alcoholics Anonymous] classes and to/from alcohol assessment(s)." Yokouchi refused to take a blood or breath test. Officer Uedoi checked to make sure that Yokouchi understood that by refusing to take the tests, "he would lose his driving privileges for one year." In response, Yokouchi "stated that he lost his license in the past and he would be able to go the one year without driving. Stated that his girlfriend will drive him around when ever [sic] he needs transportation." Yokouchi's driver's license was then revoked and he was issued a temporary driving permit which was valid for thirty days from March 18, 1999.

On March 22, 1999, Yokouchi submitted a request for reconsideration to the ADLRO, based on the following objections:

1. I did not knowingly and voluntarily refuse a test of my blood and breath. The arresting officer failed to comply with the provision of [HRS c]hapter 286–151(b)(2), 286–255, 286–254(b)(4), 286–255(2), 286–257(a)(1)(C) and 286–259(e)(3).

2. My refusal was not knowing and voluntary as required under Hawaii law. *State*
*v. Barnett,* 68 Haw. 32 [703 P.2d 680] (1985).

3. The conduct of the police officer violated the requirements of a police officer as stated in *Gray v. Administrative Director of Court,* 84 Hawai'i 130 [138, 931 P.2d 580] (1997), because I was not specifically told that if I took the test and failed it I would lose my license for 90 days but could lose it for one year.

4. The police officer's information to me on the possible sanctions was conflicting and confusing.

On March 23, 1999, the ADLRO sustained Yokouchi's driver's license revocation for the following reasons: (1) there was reasonable suspicion to stop Yokouchi's vehicle; (2) there existed probable cause to believe that Yokouchi drove the vehicle while under the influence of intoxicating liquor; (3) the evidence proved by a preponderance that Yokouchi drove his vehicle while under the influence of intoxicating liquor; and (4) Yokouchi refused to submit to a breath and/or blood test after being informed of the sanctions. The revocation period was to last from April 18, 1999 through April 17, 2000.

Yokouchi then requested an administrative hearing. A hearing was held on April 12, 1999, at which the hearing officer, Yokouchi, and Yokouchi's counsel were present. Yokouchi testified and was questioned by his counsel and by the hearing officer. On direct examination by his counsel, Yokouchi testified, in relevant part, as follows:

Q. All right. And did [Officer Uedoi] tell you that if you took a test and failed that you could lose your license for up to one year?

A. No.

Q. Had he told you that you could lose your license for up to one year if you took a test and failed it—had he told you that, would that have affected your decision to take—to refuse a test?

A. I don't know.

Q. It may have, it may not have, you just can't say?

A. Yeah.

Q. Because he didn't tell you?

A. Yeah.

Q. Okay. And did you find the form and the procedure confusing?

A. Yeah.

Upon being questioned by the hearing officer, Yokouchi testified as follows:

Q. The form that [your attorney] read to you, items 4 b, state that if you refuse to take a test that you could lose your license.

Let me read to you item b, the way [your attorney] had read it. That if you refuse to take any test the consequences are as follows: (1), that if your driving record shows no prior alcohol enforcement contacts during the five years preceding the date of arrest your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take a test and failed it.

That is what the form reads?

A. Right.

Q. And you stated that Officer Uedoi read that portion to you?

A. Right. Yes.

Q. And you chose to refuse to take a test?

A. Yes.

Q. So that portion says that you could lose your license for one year.

[YOKOUCHI's ATTORNEY]: If you failed to take a test, refuse to take a test, is that your question, counsel?

HEARING OFFICER: Right.

[YOKOUCHI's ATTORNEY]: I mean, Madam Hearing Officer?

HEARING OFFICER: Right.

Q. (By hearing officer) That your driving privileges will be revoked for one year if you chose to take a test and fail it—I'm sorry, the portion says, if your driving record shows no prior alcohol enforcement contacts during five years preceding the date of arrest your driving privileges will be revoked for one year instead of the three month revocation that would apply if you choose to take a test and fail it?

A. Yes, if I understand that?

Q. Right, that if you refuse to take any test, your driving privileges would be revoked for one year?

A. Right.

Q. That portion?

A. Um-hum.

Q. Rather than three months if you chose to take a test and refuse it?

[YOKOUCHI'S ATTORNEY]: Fail it.

Q. I mean, excuse me, if you chose to take a test and fail the test, fail it?

[YOKOUCHI'S ATTORNEY]: That's what it says, is that what you're asking him?

HEARING OFFICER: Yes.

[YOKOUCHI]: Yes.

Q. (By Hearing Officer) So did you know that if you were to refuse that your license would be revoked for one year if you refused to take a test?

A. Yes.

Q. And you chose to refuse to take a test?

A. Yes.

. . . .

Q. . . . . Did [Officer Uedoi] give you a copy of the form to follow it?

A. Yes.

Q. Okay. So you had the opportunity to read it on your own?

A. Well, he read it through and he said if I understand what he just read, I just said, basically, yeah.

Q. And you told him you understood?

A. Basically, yeah.

Q. Did you tell him you understand?

A. Um, yeah.

Q. Did you ask any questions?

A. No.

Q. Did you ask him to clarify?

A. No, I didn't want to make any waves.

At the administrative hearing, Yokouchi argued that "his constitutional rights were violated because [Officer Uedoi] did not comply with his statutory duty to advise [Yokouchi] of the sanctions of what will occur upon taking the test and of refusing the test." The basis of this argument was that since Officer Uedoi failed to correctly advise Yokouchi that if he took the test and failed it, his

license could be revoked for a period of three months up to one year, Yokouchi's refusal to take the test was not knowingly and intelligently given.

The hearing officer rejected Yokouchi's argument, revoked Yokouchi's driver's license from April 18, 1999 through April 17, 2000, and entered Findings of Fact, Conclusions of Law, Decision, which stated, in relevant part, as follows:

> [Yokouchi] ... alleged that the prejudice to him was that the misinformation led him to refuse to take a test. In this case, this Hearing Officer is not convinced by the logic of his conclusion. By the misinformation, he was given the choice of taking a test and having his license revoked for three months or refusing a test and having his license revoked for one year. Yet he chose to refuse to take a test.
>
> . . . .

### FINDINGS OF FACT

. . . .

> 6. [Officer Uedoi] informed [Yokouchi] of the choice of taking a blood or breath test or both tests, and of sanctions for refusing to take either of these tests. Officer Uedoi read ADD–DUI [sic] Form 2 to [Yokouchi]. This Hearing Officer is not persuaded that [Yokouchi] was confused by the information read to him by Officer Uedoi. [Yokouchi] did not ask question[s] or [for] clarification. This Hearing Officer is convinced that [Yokouchi] knew he would lose his license for one year by refusing to take a breath or blood test.
>
> . . . .

### CONCLUSIONS OF LAW

> 1. There existed reasonable suspicion, the traffic violation (disregarding stop sign, signals required, and use of seatbelt), for [Officer Uedoi] to have stopped the motor vehicle driven by [Yokouchi].
>
> 2. There existed probable cause, the physical signs of intoxication and the failing of the field sobriety tests, to believe that [Yokouchi] drove, operated, or was in actual physical control of the motor vehicle

while under the influence of intoxicating liquor.

> 3. [Yokouchi] refused to take a breath or a blood test.
>
> 4. Notwithstanding the foregoing, there existed by a preponderance of the evidence that [Yokouchi] drove, operated, or was in actual physical control, of the motor vehicle while under the influence of intoxicating liquor.

Yokouchi subsequently petitioned the district court for judicial review of his administrative revocation. Yokouchi made substantially the same arguments at the judicial review hearing that he made at the administrative hearing. The district court affirmed the administrative revocation and in its decision stated:

> Furthermore, though [Yokouchi] was misinformed of the sactions [sic] under the ADLR law, [Yokouchi] states that this misinformation led to his ultimate refusal to take any type of chemical test. However, [Yokouchi] was given the option of taking a test and having his license revoked for three months or the choice of refusing a test and having his licence [sic] revoked for one year. After being informed of these options, [Yokouchi] still chose to refuse to take a test. Therefore, [Yokouchi] was not prejudiced by any misinformation.

Yokouchi timely appealed this decision.

### DISCUSSION

On appeal, Yokouchi makes the following arguments: (1) before Yokouchi was required to choose between consenting or refusing to take a test, Officer Uedoi must have accurately advised Yokouchi of all the sanctions; if not, any choice made was a "legal nullity"; (2) Yokouchi's refusal was not made knowingly and intelligently; (3) Yokouchi was not required to show prejudice; and (4) Officer Uedoi failed to define "alcohol enforcement contacts" to Yokouchi. We are therefore faced with the question of whether a police officer's inaccurate recitation of the sanctions for consenting to and failing a breath or blood test requires us to reverse an administrative revocation when the arrestee refused to take either test.

In *State v. Wilson*, 92 Hawai'i 45, 987 P.2d 268 (1999), the supreme court was faced with the situation in which Wilson consented to take a chemical test after being informed of the same sanctions as stated in the AD–DUI Form 2 at issue in this case. Wilson failed the test and thereafter moved to have the test results suppressed during his criminal prosecution, on the ground that he was wrongly informed that if he took the test and failed it, his license would be revoked for three months. *Id.* at 47, 987 P.2d at 270. The Hawai'i Supreme Court agreed that under *Gray v. Administrative Director of the Court*, 84 Hawai'i 138, 931 P.2d 580 (1997), a person who consents to and then fails a chemical test in fact faces the possibility of license revocation for a period of up to one year because the ADLRO has discretionary authority to increase the minimum administrative revocation for "non-refusing" arrestees, under HRS § 286–261(b) (1993) from the stated three months in the case of a first-time offender up to the one-year mandatory period of revocation for "refusing" arrestees under HRS § 286–261(c) (Supp.1998). *Id.; Wilson*, 92 Hawai'i at 47, 987 P.2d at 270.

The supreme court stated that "Hawai'i's implied consent scheme *mandates* accurate warnings to enable the driver to knowingly and intelligently consent to or refuse a chemical alcohol test." *Wilson*, 92 Hawai'i at 49, 987 P.2d at 272 (emphasis in original). The supreme court also stated that "because the information conveyed to Wilson regarding his rights under HRS chapter 286 was inaccurate and misleading, Wilson was precluded from knowingly and intelligently consenting to the blood alcohol test in violation of HRS chapter 286." *Id.* at 54, 987 P.2d at 277. Therefore, the evidence of the test results was properly suppressed from Wilson's criminal DUI prosecution.

 In this case, however, Yokouchi argues from the standpoint of an arrestee who refused to take a chemical test after being informed that such refusal would result in his license being revoked for one year, if he had no prior alcohol enforcement contacts during the five years preceding his arrest. Under *Gray*, the ADLRO has no discretion regarding the revocation period for someone who refuses to take a breath or blood test. 84 Hawai'i at 160, 931 P.2d at 602. Therefore, Yokouchi was correctly informed of the consequences of refusal to take a breath or blood test.

 Furthermore, Yokouchi was not prejudiced by the fact that he was read a form that inaccurately informed him of the possible sanctions if he *took* the blood or breath test and failed it. Yokouchi refused to take the test knowing that he was subject to a mandatory one-year revocation of his driver's license for his refusal, a penalty equivalent to the maximum penalty he faced if he took the test and failed it. Under the circumstances, Officer Uedoi's failure to notify Yokouchi of the ADLRO's discretion to revoke Yokouchi's license for up to one year if he took the test and failed it was an immaterial omission and harmless.

 Yokouchi's final point on appeal concerned Officer Uedoi's failure to define "alcohol enforcement contacts" to Yokouchi. This point was never raised at the administrative hearing or at the judicial review hearing. It is "the general rule that an appellate court will consider only such questions as were raised and reserved in the lower court[.]" *Waikiki Resort Hotel, Inc. v. City & County of Honolulu*, 63 Haw. 222, 250, 624 P.2d 1353, 1372 (1981) (citing *Petition of Village Bd. of Wheatland*, 77 N.D. 194, 42 N.W.2d 321 (1950)). The rule applies on review by courts of administrative determinations so as to preclude from consideration questions or issues which were not raised in administrative proceedings. Since Yokouchi did not raise this issue in either the administrative or judicial review hearings, we will not consider it on appeal.

## CONCLUSION

In light of the discussion above, we affirm the district court's July 13, 1999 Judgment which affirmed the decision of the ADLRO to revoke Yokouchi's driver's license for one year.